IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ROBERT KALMBACH, SR., individually )
and THE ESTATE OF MAY KALMBACH, )
by and through its personal representative )        Civil Case No. 07-786-KI
ROBERT KALMBACH, SR., ROBERT )
KALMBACH, JR., individually, GARY )         OPINION AND ORDER
KALMBACH, individually, KEVIN )
KALMBACH, individually and THE )
ESTATE OF AMANDA KALMBACH, )
by and through its personal representative )
KEVIN KALMBACH, )
)
               Plaintiffs, )
)
      vs. )
)
JAMES HILL, an individual; T. DRAZE, )
individually and in his official capacity as a )
police officer employed by the Oregon State )
Police; the OREGON STATE POLICE, a )
political subdivision of the State of Oregon; )
and JOHN DOES 1-5, )
)
               Defendants. )
_____ )

William F. Nochols
WHITE PETERSON, P.A.
5700 East Franklin Road, Suite 200
Nampa, Idaho  83687-7901

William A. Morrow
Kevin E. Dinius
Dennis P. Wilkinson
MORROW DINIUS
5680 East Franklin Road, Suite 220
Nampa, Idaho  83687

        Attorneys for Plaintiffs

Hardy Myers
Attorney General
Matthew J. Donohue
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon  97301-4096

        Attorneys for Defendants

KING, Judge:

      Plaintiffs Robert Kalmbach, Sr., the Estate of May Kalmbach, Robert Kalmbach, Jr.,

Gary Kalmbach, Kevin Kalmbach, and the Estate of Amanda Kalmbach bring claims against

James Hill (the driver), Tricia Draze (a police officer), and the Oregon State Police ("OSP")

arising out of a motor vehicle accident.  Before the court are the following motions:  OSP's

Motion for Summary Judgment (#38), Motion to Substitute OSP for Draze (#43), Draze's

Motion for Summary Judgment (#45), and Draze's Motion to Dismiss (#57).

## BACKGROUND

Plaintiffs bring claims against James Hill, the driver of the vehicle at fault and now an inmate, Trooper Draze and the Oregon State Police. Hill is imprisoned in Idaho for vehicular manslaughter after killing Amanda Kalmbach and her grandmother, May Kalmbach, when Hill was driving the wrong direction on Interstate 84 in Idaho on October 28, 2005 at approximately 8:05 pm. The grandmother died immediately and the granddaughter died later after surgerical complications. Previously that day, at approximately noon, Trooper Draze had pulled over Hill for driving 87 mph in a 65 mph zone. Plaintiffs allege that Hill was delusional and was suffering from severe depression. According to plaintiffs, Trooper Draze should have impounded Hill's vehicle.

Hill had been a resident of Baker City, Oregon since 1974, and had been in and out of clinical depression a dozen to thirteen different times since 1990. Hill testified that he had been prescribed chloral hydrate[1] by his physician prior to the accident. Hill also testified that he believed the chloral hydrate can cause hallucinations and "make you go screwy." Hill Dep. 49:4-18. Hill testified, however, that he did not have any difficulties driving on October 28.

Hill had recently purchased a new Dodge Magnum but had not yet obtained liability insurance. He bought the car four days before the accident.

On October 28, 2005, Hill was acting strangely. A nurse at Baker Clinic saw Hill that day when he came to the clinic demanding to see a doctor. He was aggressive and said he had not slept for three months. While the nurse was trying to take vital signs, Hill told her he could

---

[1]"The oldest of the hypnotic (sleep inducing) depressants[.]"
http://www.usdoj.gov/dea/concern/chloral_hydrate.html

predict when his ex-wife was going to die, or when anyone was going to die. He claimed to have new powers from God. The nurse had never known Hill to act in this fashion.

Hill also went to the Department of Motor Vehicles in Baker City that day to renew his expired driver's license. He got upset and left when he learned he would have to take a test. He later explained he did not recall being upset, but "I can imagine that I probably would have been. I think anybody 70 years old, and you've had a driver's license all your life, and you're going to have to take it over again – I can imagine I was upset, but I do not remember it, sir." Hill Dep. 92:21-25.

Hill left town and headed toward Caldwell, Idaho.

Trooper Draze and Senior Trooper Jason W. McNeil were both in uniform and patrolling Interstate 84 together in a marked patrol car on October 28. Trooper Draze had recently transferred back to the patrol division after serving in OSP's criminal division for six years. Before working for the criminal division, she had patrolled for two years. Pursuant to OSP department practice, Trooper McNeil was assigned to assist Trooper Draze in her re-assignment to the patrol division. At 12:05 pm, the troopers stopped a silver, 2005 Dodge Magnum near milepost 327 for going 87 mph in a 65 mph zone. Hill was driving. Neither trooper noticed anything unusual about Hill's driving, other than his speed. Hill pulled his vehicle over in a reasonable amount of time.

Neither trooper noticed anything unusual about defendant Hill's demeanor when they spoke with him. Trooper Draze testified that Hill "was very respectful, cooperative, answered all of my questions. He was very polite." Draze Dep. 55:23-24. Trooper Draze testified she has not had training in recognizing mental illness or disturbance, but she does take note of strange

behavior or "things that are abnormal with speech or driving." Id. 24:6-8.  Trooper Draze had

completed First Responder Training, on March 4, 2005, which included training on recognizing

and responding to psychological emergencies.  Trooper McNeil similarly noticed nothing

unusual about Hill's behavior.  Hill told the truth about his name, date of birth, and where he

bought the car.  Trooper McNeil remembers Hill said his license was expired because he had

been ill with cancer.

Hill's Dodge Magnum had a temporary (paper) license plate in the upper left corner of the

rear window.  Trooper Draze requested Hill's license, registration and proof of insurance.

According to Trooper Draze, Hill did not hand over any of these documents, saying he left them

and his wallet at his home in Baker City, Oregon.  Hill remembers giving the expired driver's

license to Trooper Draze and could not recall what he told her about insurance.

Trooper Draze ran a radio check through dispatch to verify the information and to check

for outstanding warrants.  Trooper Draze also had dispatch contact Powder River Motors to

verify that Hill had purchased the car from the dealership.  The troopers talked together about

Hill's credibility.  They discussed the fact that he had a driver's license, that it was expired, but

that he had not lost his driving privileges due to any unlawful conduct.  They concluded that Hill

had been truthful.  They also incorrectly assumed the vehicle was financed and that, because car

dealerships require proof of insurance prior to financing a car, Hill had insurance even though he

could show no proof of it.

Trooper Draze gave Hill a citation for speeding and driving without an operator's license,

in violation of ORS 807.010, and gave him a verbal warning for driving without proof of

insurance.  After citing Hill, the troopers returned to the patrol car and drove away from the site

before Hill pulled away.  Hill testified it was a mystery to him why Trooper Draze let him

continue driving even though he had an expired driver's license and no proof of insurance.  The

entire traffic stop lasted between ten and fifteen minutes, according to Hill.

Trooper McNeil testified that he "routinely pull[s] over motorists for traveling over 85

mph on I-84 where the speed limit is 65 mph."  Aff. of McNeil ¶ 20.  Trooper Draze testified that

she does not consider speeding alone to constitute reckless driving.  Trooper McNeil testified

that if he had known Hill did not have insurance, he still would not have towed the car.

ORS 809.720(1) provides:

(1) A police officer who has probable cause to believe that a person, at or just
prior to the time the police officer stops the person, has committed an offense
described in this subsection may, without prior notice, order the vehicle
impounded until a person with right to possession of the vehicle complies with the
conditions for release or the vehicle is ordered released by a hearings officer.  This
subsection applies to the following offenses:

(a) Driving while suspended or revoked in violation of ORS 811.175 or
811.182.

(b) Driving while under the influence of intoxicants in violation of ORS
813.010.

(c) Operating without driving privileges or in violation of license
restrictions in violation of ORS 807.010.

(d) Driving uninsured in violation of ORS 806.010.

OSP Policy tracks the statute in that it permits a police officer to impound a vehicle when

the officer has probable cause to believe that the person has, in relevant part, been driving

without "driving privileges or in violation of license restrictions in violation of ORS 807.010" or

"driving uninsured in violation of ORS 806.010."  OSP's Ex. 1 at 1.  Police officers are directed

to "use discretion and good judgement in enforcement of this law" and must follow several

guidelines.  Id.  The guidelines direct that vehicles will normally *not* be impounded for "[n]o

Operator License (due to expiration or possession)" or "[v]iolations solely for ORS 806.011

(Insurance Card Required) or ORS 806.012 (Failure to Carry Insurance Card)."  Id. at 2.  Vehicles

may be impounded for DUII, DWS/DWR, no driver's license (none issued), and driving

uninsured in violation of ORS 806.010.

Plaintiffs admit that Trooper Draze's decision not to arrest Hill for the citations that she

gave him was consistent with OSP Policy.  The parties dispute whether Trooper Draze's decision

not to impound Hill's vehicle was consistent with OSP Policy.  Patrol Sergeant Lee Pearce

testified that if there were more than one violation, he would consider towing the vehicle.  He

also testified that he could not recall towing a vehicle for anything other than DUII violations.

Sergeant Pearce testified that he could not recall training the Baker City OSP station on

the impound policy.  He also testified that he believed officers got such training during in-service

training.  He knew that the personnel in the Baker City OSP station had received training

regarding the impound policy.  As a condition of employment, Trooper Draze was required to

review OSP's policies.

Neither trooper had any other involvement with Hill and received no dispatches regarding

him, either before or after the traffic stop.

After being released by Trooper Draze, Hill drove to the residence of his ex-wife, Sherri

Turner, and arrived between 2:00 and 2:30 pm.  He walked straight in without knocking, and told

Mrs. Turner he wanted a doctor.  Then he walked into the living room and started crying.  Mrs.

Turner testified that "he wasn't there.  I mean, he just kind of stood there looking empty."  Aff.

of William Morrow Ex. F, Sentencing Tr., Testimony of Sherri Turner at 13:12-13.  Hill wanted

to go to a motel.  Mr. Turner drove his vehicle to a Best Western motel with Hill following

directly behind him in his own vehicle.

Hill was not able to register at the motel because he did not have a credit card.  He drove

around for three hours but does not know where he went during that time.

About eight hours after the traffic stop, at 8:05 pm, Hill drove east in the westbound lanes

of Interstate 84.  He struck a maroon Dodge Spirit driven by Amanda Kalmbach. Passenger May

Kalmbach died at the scene of the accident.  Amanda Kalmbach died after the accident due to

anesthesia-related complications while undergoing knee surgery necessitated by the collision

with Hill.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact

and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

initial burden is on the moving party to point out the absence of any genuine issue of material

fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the

evidence is viewed in the light most favorable to the nonmoving party.  Universal Health

Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

Plaintiffs bring seven counts against defendants.  Plaintiffs allege negligence (first count)

and negligence per se (second count) against Hill only.  Hill has not filed an answer or any

motions.

Page 8 - OPINION AND ORDER

Plaintiffs allege negligence (count three) against Trooper Draze and OSP.  Plaintiffs

allege negligent supervision (count four) and state created danger (count five) against OSP only.

Intentional infliction of emotional distress (count six) and loss of consortium (count seven) are

alleged against Hill, Trooper Draze and OSP.

Plaintiffs concede in their response to defendants' motions that their *negligent* infliction

of emotional distress (also count six) should be dismissed as to OSP and Trooper Draze.

I.    Claims Against Trooper Draze

Both Trooper Draze and OSP move to dismiss Trooper Draze.

Pursuant to the Oregon Tort Claims Act, plaintiffs' claims against Trooper Draze (counts

three, six and seven) are deemed to be brought against the public body if she was acting within

the scope of her employment.  See ORS 30.265 ("[t]he sole cause of action for any tort of

officers, employees or agents of a public body acting within the scope of their employment or

duties and eligible for representation and indemnification . . .  shall be an action against the

public body only. . . . [O]n appropriate motion the public body shall be substituted as the only

defendant. "); Estate of Pond v. Oregon, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004) (State notes

that OTCA "requires that the public body be substituted for state employees who are individually

named as defendants in a tort claim.").  The State of Oregon represents that Trooper Draze is

eligible for indemnification.  Am. Mem. in Supp. of OSP's Mot. for Summ. J. at 20 n. 3.

Plaintiffs concede that since Trooper Draze was acting within the course and scope of her

employment, OSP is the appropriate defendant for their claims against her.  Pls.' Res. to Def.

OSP's Mot. for Summ. J. at 27.  Nevertheless, in their briefing, plaintiffs attempt to name

Trooper Draze in their state created danger claim (count five), which is not subject to ORS

30.265, even though their Complaint names only OSP.

        In their count five, plaintiffs allege OSP created a danger to them by not training and

supervising Trooper Draze, depriving them of their protections under the Due Process Clause.

Plaintiffs concede that OSP is not the proper defendant for this claim because OSP is not a

"person" for purposes of 42 U.S.C. § 1983.  They assert, however, that Trooper Draze may be

sued in her individual capacity.

        Defendants point out that Trooper Draze is not named as a defendant in this claim and

that the entire claim is premised on OSP's failure to adequately train Trooper Draze.

        Plaintiffs do not request permission to amend their Complaint and even if they had I

would deny the request as futile.

        The "state created danger" theory is that although normally citizens have no due process

constitutional right to sue state actors for failing to protect them from harm caused by third

parties, when the state "affirmatively places the plaintiff in a position of danger" the citizen has

alleged a violation of his constitutional rights.  Kennedy v. City of Ridgefield, 439 F.3d 1055,

1061 (2006).  In their brief, plaintiffs assert Trooper Draze placed plaintiffs in "known danger

with deliberate indifference to their personal, physical safety."  Pls.' Resp. at 20.  Plaintiffs

specifically assert Trooper Draze allowed Hill to maintain custody of his car even though he was

speeding and failed to provide a driver's license, insurance or registration.  Plaintiffs also point to

Hill's mental status, as commented on by the Baker Clinic nurse, just prior to being pulled over.

        To state a claim of a constitutional violation under the state created danger exception,

plaintiffs must demonstrate Trooper Draze placed plaintiffs in a worse position than they would

have been in had she not acted.  For example, in <u>Kennedy</u>, a police officer agreed, but then failed, to give plaintiff advance warning before he told a neighbor about the plaintiff's allegations of sexual abuse.  The neighbor fatally shot the plaintiff's husband and wounded plaintiff.  439 F.3d at 1057.  In <u>Wood v. Ostrander</u>, 879 F.2d 583 (9th Cir. 1989), a trooper left a female passenger in a high-crime area when he impounded the car and arrested the driver.  The woman accepted a ride from a passerby and was raped.  In <u>Munger v. City of Glasgow</u>, 227 F.3d 1082 (9th Cir. 2000), the police ejected a drunk man from a bar and he died of hypothermia.

The facts from the instant case differ significantly from the cases of <u>Kennedy</u>, <u>Wood</u>, and <u>Munger</u>.  Trooper Draze did not take any action that affirmatively placed plaintiffs in a worse position than they otherwise would have been in had she not acted.  In other words, Trooper Draze did not "create[] or expose[] an individual to a danger which he or she would not have otherwise faced."  <u>Kennedy</u>, 439 F.3d at 1061.  Indeed, Hill would still have been driving even had Trooper Draze not intervened and pulled him over.[2]  See <u>Johnson v. City of Seattle</u>, 474 F.3d 634 (9th Cir. 2007) (police officers did not "enhance[] the dangers [plaintiffs] exposed themselves to" when police switched from aggressive security plan to more passive plan); <u>DeShaney v. Winnebago County Dep't of Soc. Serv.</u>, 489 U.S. 189, 201 (1989) (state returned child to abusive father but state "placed [plaintiff] in no worse position than that in which he would have been had it not acted at all").

---

[2]Since I find plaintiffs have failed to state a claim against Trooper Draze as a matter of law with respect to their state created danger claim, I do not evaluate OSP's qualified immunity argument.

For the foregoing reasons, I dismiss the claims against Trooper Draze.

II.    Claims Against OSP

    A.    Negligence (Count Three)

To successfully make out a negligence claim, a party must allege "a status, a relationship, or a particular standard of conduct that creates, defines or limits the defendant's duty." McAlpine v. Multnomah County, 131 Or. App. 136, 141, 883 P.2d 869 (1994).  Plaintiffs may also state a claim under the general foreseeability standard set out in Fazzolari v. Portland School Dist. No. 1J, 303 Or. 1, 734 P.2d 1326 (1987).

    1.    Duty Under § 319

Plaintiffs admit that defendants owed them no statutory duty to impound Hill's car under ORS 809.720.  Plaintiffs instead rely on the "special duty" identified in the Restatement (Second) of Torts, § 319 (1965).  That section provides:

> § 319.  Duty of Those in Charge of Person Having Dangerous Propensities.  One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

For the duty to apply, Trooper Draze must have taken charge of Hill and must have known or should have known Hill was likely to cause bodily harm to others if not controlled. Buchler v. Oregon Corrections Division, 316 Or. 499, 506-07, 853 P.2d 798 (1993).

Plaintiffs contend that Trooper Draze "took charge" of Hill when she pulled him over for speeding.  Trooper Draze could have impounded Hill's car and/or arrested him.  As for the second factor, plaintiffs assert Trooper Draze knew or should have known Hill was dangerous. Hill was traveling twenty miles per hour over the speed limit, without a license or registration,

and without insurance.  In addition, both before and after Trooper Draze gave Hill the traffic

citation, people noted Hill's erratic behavior.  The nurse at the Baker Clinic remembered Hill

said he could predict when people would die.  When he arrived at the Turner residence, Mrs.

Turner described Hill as not being there and "looking empty."  Morrow Aff. Ex. F, Sentencing

Tr., Testimony of Sherri Turner, 13:12-13.  Hill thought it was a mystery why Trooper Draze let

him go.  Plaintiffs assert that, at a minimum, they have provided enough evidence to create a

genuine issue of material fact as to Trooper Draze's duty to prevent Hill from harming others.

I disagree with plaintiffs.  An officer making a traffic stop does not "take charge" of the

driver for purposes of § 319.  The "special duty" has been applied to jailers who take custody of

prisoners.  Buchler, 316 Or. at 506.  In contrast, there is no "special duty" for those who

supervise parolees or probationers.  Washa v. Oregon Dep't of Corrections, 159 Or. App. 207,

218, 979 P.2d 273 (1999).  In the latter case, the court noted, "We think it is more in keeping

with the policy underlying the rule to require that the third person be in the defendant's custody

or under its control at the time of the negligent act before liability under section 319 attaches."

Id.

Although Oregon courts have not yet examined whether the "special duty" articulated in §

319 applies to traffic stops, other jurisdictions have rejected the notion.  In Alaska, the court

declined to apply § 319 to a police officer who interviewed a person with an outstanding arrest

warrant but did not arrest the individual; the police never took charge of the individual.

Wongittilin v. State, 36 P.3d 678, 683 (Alaska 2001).  In Montana, referring to the Blacks Law

Dictionary, the court concluded that because "in charge of" requires "custody," and because

"custody" requires "actual imprisonment or physical detention," § 319 requires legal or physical

restraint on liberty.  Nelson v. Driscoll, 983 P.2d 972, 979 (Mont. 1999) (officer directing

individual not to drive insufficient).  The court gave some examples:  school-minor pupil; parent-

child; jailer-inmate; carrier-passenger; innkeeper-guest, and hospital-patient.  Courts in Maryland

and Georgia have similarly held that for the special duty in § 319 to apply, the officer must

impose custodial detention, not investigatory detention.  Jones v. Maryland-Nat'l Capital Park

and Planning Comm'n, 571 A.2d 859, 868 (Md. 1990); Holcomb v. Walden, 607 S.E.2d 893

(Ga. Ct. App. 2004).  I find these cases to be persuasive.

As for the second factor, there is no evidence Trooper Draze knew or had reason to know

that Hill would cause anyone bodily harm.  In Washa, the individual was on parole and had a

violent history.  In Kim v. Multnomah County, 138 Or. App. 417, 909 P.2d 886 (1996), the

individual was on probation for assault.  Here, Trooper Draze had no knowledge of Hill's

behavior at the clinic, Hill was "very polite" during the stop, speeding is not normally considered

reckless driving, and Hill had no motor vehicle violations for more than twenty years before

letting his license and insurance lapse.  Trooper Draze had no knowledge, and no reason to know,

that Hill would cause bodily harm to someone else.

Trooper Draze had no duty to plaintiffs under § 319.  She had not taken charge of Hill,

nor had she sufficient indication that he might cause bodily harm to others.

2.    Negligence Under Fazzolari's General Foreseeability Standard

As noted above, where no special relationship imposes an obligation on a defendant,

plaintiffs may state a claim under the general foreseeability standard set out in Fazzolari.  303 Or.

1.  "[T]he issue of liability for harm actually resulting from defendant's conduct properly

depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of

the kind of harm that befell the plaintiff." Id. at 17. A defendant will not be liable where "[a]n intervening criminal instrumentality caused the harm and created the risk." Buchler, 316 Or. at 511. Where, however, "the defendant can reasonably foresee likelihood of specific criminal conduct by a third party in light of the third party's criminal history and the defendant's knowledge of that history, the realization of that foreseeable likelihood cannot be deemed 'intervening' or 'supervening' causation that somehow precludes liability." Washa, 159 Or. App. at 224-25. Foreseeability is generally an issue left for the jury except when the harm results from "the concatenation of highly unusual circumstances." McPherson v. State ex. rel. Dept. of Corrections, 210 Or. App. 602, 614, 152 P.3d 918 (2007).

Although plaintiffs need only show that the "generalized risks of the type of incidents and injuries that occurred" were foreseeable to support a negligence claim, the facts here fall short. Id. at 617. Speeding, an expired license and lack of proof of insurance are violations of the law that are qualitatively different from vehicular manslaughter. The evidence in the record reflects that Trooper Draze saw a man who was speeding on a rural section of the highway who had accidentally left his wallet and vehicle paperwork for his new car at home. It is not reasonably foreseeable that Hill's speeding and non-moving violations would lead to Hill driving the wrong way on a highway and committing vehicular manslaughter. See McAlpine, 131 Or. App. at 143-44 (not foreseeable that negligently supervised parolee with violent criminal history would attack plaintiff when he was on parole for non-violent crime); Miller ex rel. Miller v. Tabor West Invest. Co., LLC, 223 Or. App. 700, 716, 196 P.3d 1049 (2008) ("in the absence of more specific knowledge of the risk of the type of harm that befell plaintiff, we conclude that defendants' conduct constituted 'mere facilitation' of Woods's intervening criminal conduct").

Page 15 - OPINION AND ORDER

Alternatively, defendants assert that intervening criminal behavior cuts off their liability. A party is not liable for negligence if the subsequent intervening criminality of a third party causes the harm. <u>Buchler</u>, 316 Or. at 511-12. Here, speeding is not typically considered reckless conduct, driving with an expired license and failure to carry an insurance card are not violations that ordinarily require impounding a car, and a failure to have insurance at all does not indicate a propensity to commit moving violations. Trooper Draze had no knowledge of Hill's prior erratic behavior, there was no history of motor vehicle violations, and Hill was polite.

Plaintiffs raise no material issue of fact demonstrating that Trooper Draze could reasonably foresee Hill's subsequent criminal conduct.[3] As a result, this claim is dismissed.

**B.     Whether OSP Negligently Supervised (Count Four) Trooper Draze**

Defendants assert that plaintiffs cannot show that defendants acted negligently in supervising and training Trooper Draze. In order to make out a claim of negligent supervision, a plaintiff must show that an employer failed to enforce its policies and that the failure makes it "reasonably foreseeable under the circumstances that the harm that befell plaintiff would occur." <u>Hoke v. May Department Stores Co.</u>, 133 Or. App. 410, 421, 891 P.2d 686 (1995).

Plaintiffs fail to identify any material issues of fact showing that OSP failed to supervise or train Trooper Draze. Trooper Draze was supervised that day by Trooper McNeil. The OSP Policy instructs officers to refrain from impounding a vehicle for an expired driver's license or no insurance card and to use their discretion in deciding whether to impound for lack of insurance. In other words, the OSP Policy allowed Trooper Draze to let Hill leave. Plaintiffs

---

[3]Since I resolve this claim on other grounds, I do not reach OSP's argument that the negligence claim is barred by discretionary immunity under ORS 30.265(3)(c).

may not like the Policy, but that does not mean Trooper Draze was improperly trained or supervised. Plaintiffs have no evidence that either trooper noted anything unusual about Hill. Although Sergeant Pearce testified that he might have considered towing the vehicle, he also could not remember any time he had impounded a vehicle other than for DUII. Plaintiffs do not point to any additional information Trooper Draze should have obtained before making a decision about whether to let Hill leave. In other words, it is unclear how additional training or supervision would have changed the outcome. Furthermore, plaintiffs do not explain what training failed to take place. Finally, plaintiffs provide no evidence of any pattern of similar conduct which would trigger any responsibility by OSP in supervising or training Trooper Draze.

This claim is dismissed.[4]

C.      "State Created Danger" Claim (Fifth Count) Pursuant to 42 U.S.C. § 1983

As I stated above, plaintiffs concede that OSP is not the proper defendant for this claim because OSP is not a "person" for purposes of 42 U.S.C. § 1983. In addition, as I concluded above, plaintiffs fail to state a claim for state created danger against Trooper Draze in her individual capacity. This claim is dismissed.

D.      Intentional Infliction of Emotional Distress

Defendants argue plaintiffs fail to allege in their Complaint, or show facts from which a jury could find, that defendants intended to cause them harm. In addition, defendants argue that their conduct was not beyond the bounds of socially tolerable conduct.[5]

---

[4]Since I resolve this claim on other grounds, I do not reach OSP's argument that the negligent supervision claim is barred by discretionary immunity under ORS 30.265(3)(c).

[5] Defendants also argue that what plaintiffs have pled is a wrongful death action and that surviving beneficiaries cannot obtain emotional distress damages in a wrongful death action.

The tort of intentional infliction of emotional distress contains the following elements:

(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995).  Intent is defined to mean "where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct."  Id. at 550 (emphasis omitted).  The nature of the relationship between the parties affects the type of conduct that is considered actionable.  Id. at 548.  Oregon cases which have allowed claims for intentional infliction of emotional distress to proceed typically involve acts of psychological and physical intimidation, racism, or sexual harassment.  See Babick v. Oregon Arena Corp., 333 Or. 401, 413, 40 P.3d 1059 (2002) (defendant's release of intoxicated and violent concertgoers who had been detained by plaintiffs presented a threat of imminent physical harm that was presumed grave); Kraemer v. Harding, 159 Or. App. 90, 976 P.2d 1160 (1999) (continued accusations that a school bus driver was a child sex abuser after multiple investigations concluded that no inappropriate conduct occurred).

Plaintiffs argue they have alleged sufficient facts to show emotional distress was substantially certain to result from Trooper Draze's conduct.  Trooper Draze failed to take Hill into custody and impound his vehicle, despite Hill's lack of license or insurance, and Trooper Draze was not properly supervised in making her decision.  Plaintiffs also argue that the conduct was outrageous—the actor here is a police officer who, as a person in power, is held to a higher

_____

ORS 30.020(2).  Since I resolve the motion on other grounds, I need not reach this issue.

Page 18 - OPINION AND ORDER

standard than other actors.  See Mauri v. Smith, 135 Or. App. 662, 675-76, 901 P.2d 247 (1995),

aff'd in part, rev'd in part on other grounds, 324 Or. 476, 929 P.2d 307 (1996) ("police officers

exercise special authority and, because of that authority, they are, in some circumstances, subject

to special standards of conduct").  Plaintiffs assert that Trooper Draze's actions in failing to

impound Hill's vehicle, given his violation of four laws and his mental state, is "clearly

outrageous."  Pls.' Resp. at 27.

Setting aside the question of whether plaintiffs properly pled an intentional infliction of

emotional distress claim, plaintiffs have not raised a genuine issue of fact to satisfy the factors of

the claim.  Plaintiffs have no evidence to support the notion that Trooper Draze "acted

volitionally with knowledge that the acts would cause severe emotional distress."  McGanty, 321

Or. at 550-51.  It is true that "[i]f the actor knows that the consequences are certain, or

substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he

had in fact desired to produce the result."  Id. (quoting Comment i of the Restatement (Second)

of Torts § 46 (1965)).  Here, however, there is no evidence that Trooper Draze was certain or

substantially certain that Hill would hit another vehicle going the wrong direction on the highway

eight hours after she stopped him.  However mistaken Trooper Draze may have been in allowing

Hill to proceed, viewing the evidence in the light most favorable to plaintiffs, there is no

evidence that Trooper Draze intended to cause emotional distress or that plaintiffs' severe

emotional distress was a substantial certainty of Trooper Draze's actions.

Additionally, Trooper Draze's actions were not outrageous.  Whether conduct constitutes

an extraordinary transgression of the bounds of socially tolerable conduct is a question of law.

Harris v. Pameco Corp., 170 Or. App. 164, 171, 12 P.3d 524 (2000).  OSP Policy gives police

officers discretion when making decisions about impounding vehicles. The guidelines direct that vehicles will normally *not* be impounded for "[n]o Operator License (due to expiration or possession)" and "[v]iolations solely for ORS 806.011 (Insurance Card Required) or ORS 806.012 (Failure to Carry Insurance Card)." Id. at 2. Furthermore, nothing in the policy directs impoundment when both of these conditions are met. Even had Trooper Draze discovered that Hill was driving uninsured in violation of ORS 806.010, she still had discretion as to whether to impound his vehicle. Furthermore, plaintiffs point to no evidence that Hill's demeanor was unusual when the officers spoke with him. In fact, the opposite is true. According to Trooper Draze, Hill "was very respectful, cooperative, answered all of my questions. He was very polite." Draze Dep. 55:23-24. Hill did not testify that he was acting abnormally. Nothing in Trooper Draze's actions could be characterized as an "extraordinary transgression of the bounds of socially tolerable conduct."

Mauri does not change the outcome. Two factors warranted a finding of outrageous conduct based on a special relationship in that case. The first factor, which is present here, was that the defendants were police officers, but the second factor, that the conduct took place in the plaintiff's home, is not present here.

For the foregoing reasons, I dismiss plaintiffs' intentional infliction of emotional distress claim.

E.    Loss of Consortium

Finally, defendants argue that if a person's death is instantaneous, an action for loss of consortium is barred. Harp v. Montgomery Ward & Co., 223 F. Supp. 780, 781 (D. Or. 1963).

Loss of consortium is limited to damages occurring between the time of the injury and the time

of death.  May Kalmbach died immediately upon impact.

Plaintiffs do not respond to this argument.  This claim is dismissed.

III.    Conclusion

Plaintiffs' claims against Hill (counts one, two, and six) remain viable as Hill has not

filed any motions.

Plaintiffs' tort claims against Trooper Draze individually (counts three, six and seven) are

dismissed as OSP must be substituted for her.

Plaintiffs' negligence claim (count three) against OSP fails for lack of a duty and is

dismissed.  Plaintiffs' negligent supervision claim (count four) against OSP fails for lack of

evidence of inadequate training or supervision and is dismissed.

Plaintiffs' state created danger claim (count five) is improperly alleged against OSP.

Plaintiffs did not seek to amend their Complaint.  Even if they had sought to amend their

Complaint, they would be unable to state a claim against Trooper Draze.

Plaintiffs' intentional infliction of emotional distress claim (count six) against OSP fails

for lack of evidence of intent or outrageous conduct.  This claim is dismissed.

Plaintiffs' concede their negligent infliction of emotional distress (count six) as to

Trooper Draze and OSP.  This claim is dismissed.

Plaintiffs fail to make any argument in defense of their loss of consortium claim (count

seven), and this claim is dismissed as a matter of law as to all defendants, including Hill.

Page 21 - OPINION AND ORDER

**CONCLUSION**

For the foregoing reasons, OSP's Motion for Summary Judgment (#38) is granted,

Draze's Motion to Substitute OSP for Draze (#43) is granted, and Draze's Motion for Summary

Judgment (#45) or Motion to Dismiss (#57) is granted. The only remaining claims against Hill

are counts one (negligence), two (negligence per se) and six (intentional infliction of emotional

distress). The loss of consortium claim (count seven) is dismissed as a matter of law as to all

defendants, including Hill. Hill has been served but has not filed an answer. Plaintiffs must

inform the Court how they wish to proceed by February 17, 2009.

IT IS SO ORDERED.

Dated this _____2nd_____ day of February, 2009.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge


Page 22 - OPINION AND ORDER